CITY OF ELIZABETH v. CENTRAL RAILROAD COMPANY OF NEW JERSEY.

Argued June 7, 1911—Decided November 1, 1911.

In order to warrant the direction of a verdict for a defendant it should appear that the evidence offered by the plaintiff to sustain his case was clearly insufficient to justify a verdict in his favor, and that a verdict rendered for the plaintiff thereon would be set aside as unsupported by the evidence or against the weight of it.

---

In ejectment.   On case certified from the Union County Circuit Court.

Before Justices SWAYZE and BERGEN.

For the plaintiff, *James C. Connolly* and *Frank Bergen.*

For the defendant, *Frederick J. Faulks* and *Richard V. Lindabury.*

The opinion of the court was delivered by

BERGEN, J.   The plaintiff brought this action in ejectment to recover possession of a tract of land which it claims is a part of a public highway in the city of Elizabeth, now called Elizabeth avenue, of which the defendant now has the possession. The highway is a very ancient one, having been established by the colonial legislature in 1765, and then and now runs across a tract of land designated as the "Old Point Tract" to the "edge of the sound," *i. e.,* Staten Island sound.   The present dispute is the location of the high-water mark of the sound when the highway was laid out.   The defendant claims to hold the land under a grant from the riparian commissioners made to it in 1874 of a tract of land lying between the original high-water line of the sound and the exterior wharf line as established by the commissioners, and insists that this conveyance embraces the *locus in quo* within its boundaries if the original high-water mark in 1685 was as far north of the present shore line as it claims, and therefore that the entire tract in dispute lies between the orginal "edge of the sound" and the present shore line.   It is not necessary to pass upon the legal sufficiency of defendant's grant, because the questions certified can be properly disposed of on other grounds, and therefore no opinion is expressed on that matter.   The issue at the trial, and the one submitted to the jury, was the location of the high-water mark when the highway was laid out, and that is the only phase of the case we are called upon to consider in the present proceeding.   The jury returned a verdict for the plaintiff, and the trial court allowed a rule to show cause why the verdict should not be set aside upon the ground that it was contrary to the weight of the evidence, reserving all bills of exceptions taken at the trial, which rule was later so amended as to require the plaintiff to further show cause why the judgment entered on the verdict, before the rule was allowed, should not be va-

cated.  Subsequently, the defendant applied for an order, which was allowed, permitting it to waive all bills of exceptions sealed to the refusal of the court to direct a verdict for the defendant as to the whole, or a part of the *locus in quo*.  The trial court conceiving that difficult and doubtful questions of law were raised, founded on its refusal to direct a verdict for the defendant, either as to the whole or a portion of the *locus in quo*, certified to this court for its advisory opinion the following questions:  "(a) Whether a new trial should be granted because of the refusal of the court to direct a verdict for the defendant for the whole of the *locus in quo?*  (b) Whether a new trial should be granted because of the refusal of the court to direct a verdict for the defendant for so much of the *locus in quo* as lies to the southeast of a straight line drawn across the same from northeast to southwest, distant from the northwesterly side thereof sixty-six feet on the northeasterly line and ninety-two feet on the southwesterly line?"  In order to warrant the direction of a verdict for a defendant, it should appear that the evidence offered by the plaintiff to sustain his case was clearly insufficient to justify a verdict in his favor, and that a verdict rendered for the plaintiff thereon would be set aside as unsupported by the evidence or against the weight of it.  *Hartman* v. *Alden, Executrix,* 5 *Vroom* 518; *McCormack* v. *Standard Oil,* 31 *Id.* 243, 245.  So, if there be any evidence from which the jury could properly infer that the original high-water mark was south of the *locus in quo* in 1765, then contradictory testimony offered by the defendant would raise a disputed question of fact and not a doubtful question of law.  The defendant claims that not only did the plaintiff fail to show any title to the land in controversy, but, on the contrary, defendant's case conclusively demonstrated that when the road was laid out, its terminal point, the edge of the sound, was north of the *locus in quo,* and that all of the *locus in quo* was an alluvial formation, which the defendant argues is subject to the right of the state to grant, and that if the evidence was not absolutely conclusive, it so overweighted that offered by the plaintiff as to require the setting aside of the verdict in its favor.  The burden of showing the location

of the original high-water mark is on the defendant (*Elizabeth* v. *Central Railroad Company of New Jersey,* 50 *Id.* 542), and in order to entitle it to a directed verdict on that ground, it must establish that fact so clearly as to place it beyond reasonable doubt.

The plaintiff, in order to support its case, produced at the trial an ancient map made in 1797, called the DeCamp map, on which was protracted, but without courses or distances, the ancient highway, showing that it ran to the sound. It appears from this map that on the westerly side of the avenue there is a monument, placed there in 1690 or 1691, the date marked thereon appearing to be 1691. This monument is still in existence, well preserved, and the accuracy of its location is not disputed. This map, called in this case the DeCamp map, is drawn to a scale, and the distance from the monument, along the ancient highway to the sound, ascertained by scaling the map, is substantially the distance at the present time between the two points, so, if the map is accurately drawn, according to the scale stated on it, it would be quite persuasive that the original high-water mark is now where it was in 1765, which is south of the *locus in quo.* In 1797, the land belonged to John Stites, Aaron Ogden and Jonathan Dayton, as tenants in common, and in 1802 Dayton conveyed his interest in the tract lying on the east of the avenue to Thomas Gibbons, which is described in the deed as "beginning on the northeast side of the Old Point road six rods, north fifty-two degrees, twenty minutes east, from the stone marked R T, 1690, which is a corner of land belonging to Thomas Crowell, from said beginning, running along the northeast side of the road south thirty-two degrees and forty-five minutes east, thirty-four chains and sixty-eight links more or less to the edge of the sound, and one chain more into the sound," and then, following numerous courses and distances to a large white oak tree, "being the northerly corner of the Old Point farm." It thus appears that, in a deed made in 1802, the distance from the old monument to the sound substantially corresponds with the present distance from the monument to the sound, and that the same result is reached by scaling a map made five years earlier. In

addition to the above there were other deeds and maps from which an inference may be drawn that the measured distance from the old monument to the high-water line has remained practically the same for over a century, so if the proofs offered by the plaintiff have any evidential force they tend to show that, contrary to the claim of the defendant, the entire *locus in quo* has always been located above the present high-water mark of the sound, and if this be true, the plaintiff has conclusively established its right to the land in dispute. But the defendant claims that it has met this testimony by such a preponderance of evidence as to justify the disregarding of the finding of the jury for the plaintiff, and the setting aside of the verdict, upon the ground that it is against the weight of the evidence. The accuracy of the DeCamp map is assailed, and it is claimed, its evidential value is destroyed, by the testimony of Mr. Quien, who made a survey of the tract in the year 1870, which he claims demonstrates that DeCamp had located the white oak tree about seventy feet south of its proper place. He did not find the oak tree, for that had disappeared many years ago, nor anything to indicate its location at the point fixed by him, except a depression in the ground about seventy feet north of the place where the DeCamp map locates it, and if he be correct, then the distance along the highway between the sound and the old monument would be sixty-five feet less than the DeCamp map and the deed of 1802 calls for, and this would bring the original high-water mark through the *locus in quo* at a point about seventy feet north of the present shore line. If this error is not clearly demonstrated then the inaccuracy of the map is not conclusively shown. As the DeCamp map substantially follows the field notes made for the commissioners, of whom DeCamp was one, appointed in 1790 to partition the land adjacent to the highway, it is assumed by the defendant that the map was made from such field notes, but the map and notes do not exactly correspond, and as the map is endorsed "surveyed Novem. 1797," at the request of the owners, and the partition was reported in 1790, no conclusive presumption arises that the defendant's assumption is correct. The field notes of the 1790 survey, and which the Supreme

Court justice, who appointed the commissioners, directed should be recorded in the office of the clerk of the county of Essex, contains the description of a large tract of land across which the highway ran to the sound, which begins at the stone monument and runs from thence westerly and easterly four courses to the Elizabethtown creek, and then returning to the beginning point, runs easterly two courses, and then "(3) north forty-eight degrees west eleven chains and thirty-six links to James Rickett's land; thence (4) north fifty-six degress and thirty minutes cast forty-seven chains and ninety links * * * to a white oak tree, a reputed old corner." The errors which Mr. Quien claims to have discovered are, that the fourth course above set out measures about a chain less than that called for by the notes and map, and he finds such a variance in the bearings of the fifth course that its proper termination at the oak tree is about seventy feet north of that called for in the ancient documents. That the survey made by Mr. Quien is not indisputably correct, or even entitled to much consideration as evidence, is exhibited by his testimony which is, that when measuring the third course he started it from a point which he assumed had been correctly located by another surveyor, and when he was asked whether he knew that it was correctly located, answered, "Well, the surveys made at various times show there must have been some accuracy to it because they do not vary." It does not appear that he measured to the point called for in the original field notes, but to what he assumed to be the original line of the Old Point tract as established by other surveys. Then, again, in the fifth course he did not follow either the bearings contained in the field notes of 1790 nor the course called for therein as modified by making the proper allowance for the period that had elapsed between 1790 and 1870. It cannot be said, as a matter of law, that the accuracy of such survey has been so clearly demonstrated as to remove that question from the consideration of the jury, or to entitle it to so much weight as to justify the conclusion that a finding in favor of the old records is against the weight of the evidence. It is also urged that the deed of 1802 has no force because it was prepared from the DeCamp map, and that

the distance called for by the deed along Elizabeth avenue, where no figures appear on the map, was undoubtedly obtained by scaling the map, but that inference has no fact to support it. If we enter the realm of probabilities, it is more likely that the distance was measured, and that the deed accurately describes the length of the line. It is quite contrary to common experience to prepare a deed from the scaling of a map rather than from actual measurements which can conveniently be made. Mr. Harrison was called as an expert, but much of his testimony is rested upon the correctness of the conclusions reached by Mr. Quien, and the testimony with reference to the coast survey is far from convincing. The case is one of fact, the jury heard the evidence offered by both parties and have drawn the inference which they declared by their verdict, which we think is justified by the evidence, and in our opinion the defendant has not overcome the plaintiff's case by any such preponderance of evidence as to support a finding that the plaintiff failed in making out its case, or that the defendant so established the location of the original high-water mark at either of the places claimed by it, as to require us to say that the verdict is contrary to the weight of the evidence.

As in our opinion the verdict of the jury, that the whole of the *locus in quo* is the property of the plaintiff, is supported by testimony, and such testimony has not been met by any such preponderating evidence as to justify us in concluding that the jury had not sufficient evidence upon which to rest their verdict, it becomes unnecessary to consider the second question certified, namely, that the verdict should have passed for the defendant as to a part of the *locus in quo*. The trial court is therefore advised that there was no error in refusing to direct a verdict on either of the grounds certified, and that the rule to show cause should be discharged.